UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL MILLER-KENNEDY

Petitioner,

v.

MAGGIE MILLER-STOUT,

Respondent.

Case No.  C05-5122RBL

REPORT AND RECOMMENDATION

**NOTED FOR:**
**August 5th, 2005**

This Habeas Corpus Action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.  Petitioner filed this action under 28 U.S.C. § 2254.

INTRODUCTION AND SUMMARY CONCLUSION

One of the two issues raised in this petition is unexhausted but procedurally barred.  The other issue is without merit and the court recommends this petition be **DISMISSED WITH PREJUDICE.**

FACTS

Petitioner challenges his Grays Harbor County Superior Court convictions for one count of manufacture of methamphetamine and one count of possession of methamphetamine.  He was

REPORT AND RECOMMENDATION
Page - 1

1  sentenced to 68 months of confinement and 12 months community custody. (Dkt. # 17, Exhibit 1).

2  The Washington State Court of Appeals summarized the facts of the crime as follows:

> On May 21, 2001, detectives from the Thurston County Narcotics Task Force and the Grays Harbor County Drug Task Force went to Ronald Johnson's home with a warrant to arrest Kennedy. Kennedy had outstanding warrants for his arrest and had listed Johnson's address with the Department of Licensing as his mailing address.
>
> When the detectives contacted Johnson and asked him if he knew Kennedy's whereabouts, Johnson gave the detectives permission to search his property and an adjacent property that Johnson was renting. Johnson then helped the detectives search Johnson's residence, but they did not find Kennedy. On the adjacent rental property was a very large shop building and several other outbuildings. Johnson told detectives they could look in the shop and he gave them a set of keys that opened the shop door. As the detectives approached the shop building, they heard voices inside and saw James Pettyjohn come out the shop door. The detectives asked Pettyjohn if he knew where Kennedy was and if there was anyone else in the shop. Pettyjohn told officers that another man was in the shop, but he was not aware of the man's name.
>
> Two detectives knocked on the shop door and a voice from inside said, 'Who is it?' Report of Proceedings (RP) (July 24, 2001) at 29. A detective replied, 'It's Ron. Hurry, open the door.' RP (July 24, 2001) at 30. When the shop door opened, a detective identified himself as a police officer. Kennedy attempted to shut the door, but a detective put his foot in the door to hold it open. The detectives pushed the door open and struggled to subdue Kennedy.
>
> Immediately after they entered the shop, the detectives realized they were in an active methamphetamine lab. They secured the scene while they obtained a search warrant for the shop building and vehicles. The detectives served the search warrant and seized items consistent with a methamphetamine lab, including an electric burner, Red Devil Lye, a mason jar containing a red sludge-like material, stained coffee filters, and a large gallon-sized plastic bag containing methamphetamine from the shop.
>
> The warrant also authorized detectives to search a maroon Buick parked near the shop. In the trunk of the Buick, detectives found a plastic bag containing several red-stained coffee filters that subsequently tested positive for red phosphorous and methamphetamine. The Buick was not registered to Kennedy, but inside the glove box detectives found his temporary and permanent driver's licenses, a receipt for a motel listing the Buick as Kennedy's vehicle, a receipt with Kennedy's name on it for a gun, a small piece of paper with the name 'Mike' on it and the words 'hose, rubber gloves, and paper towels,' and a sales receipt for Red Devil Lye. RP (July 24, 2001) at 117-120.
>
> On May 22, 2001, the State charged Kennedy with one count of possession of methamphetamine and one count of manufacture of methamphetamine. The jury returned guilty verdicts on the crimes as charged, and the court sentenced Kennedy to a standard range 68-month sentence.

(Dkt. # 17, Exhibit 3 page 2 and 3).

Also relevant to this petition is petitioner's attempt to represent himself. Prior to trial petitioner filed a motion to represent himself. Petitioner was questioned by the presiding Judge

REPORT AND RECOMMENDATION
Page - 2

regarding his education and legal experience and the court then took a recess and instructed petitioner to think about his request for self representation. When the court reconvened petitioner stated "Sir, rather than make matters worse for myself, I'd rather just accept your ruling and leave it at that." (Dkt. # 17, Exhibit 16, report of proceedings June 18th, 2001). Later in the pre-trial process before a different presiding Judge petitioner was asked if he was prepared to proceed with appointed counsel and he answered in the affirmative. (Dkt. # 17, Exhibit 16, report of proceedings July 17th, 2001). Given this record the Washington State Court of Appeals held petitioner had not made an unequivocal request for self representation and had withdrawn his request. (Dkt. # 17, Exhibit 3).

## PROCEDURAL HISTORY

Petitioner appealed both pro se and through counsel. Counsel's brief raised the following six issues:

1. Whether a criminal defendant should be permitted to exercise his or her constitutional right to self-representation.

2. Whether the trial court erred in not taking count II, possession of a controlled substance, from the jury for lack of sufficient evidence.

3. Whether the trial court erred in not taking count I, manufacture of methamphetamine, from the jury for lack of sufficient evidence.

4. Whether the trial court erred in not instructing the jury that it must be unanimous on which act constituted the crime of possession of methamphetamine.

5. Whether the prosecutor's closing argument that no evidence was presented to explain why Kennedy was in the meth lab was a comment on Kennedy's decision not to testify and shifted the burden of proof.

6. Whether Kennedy was prejudiced as a result of his trial counsel's failure to properly object, request a curative instruction, or move for a mistrial relating to the State's closing argument that no evidence was presented to explain why Kennedy was in the meth lab.

(Dkt. # 17, Exhibit 4 pages 2 and 4). The issues in petitioner's pro se brief were summarized by the respondent as:

1. Kennedy was denied the right to move to suppress evidence collected in the warrantless search of the residence.

2. Kennedy was prejudiced when his trial counsel failed to timely move to suppress.

3. The prosecutor committed misconduct by arguing in closing that Kennedy was

REPORT AND RECOMMENDATION
Page - 3

wandering through the meth lab looking for gas when police came in the door. The comment was false and highlighted Kennedy's decision not to testify, thus denying him a fair trial.

4. Kennedy was prejudiced when his trial counsel failed to object to the prosecutor's closing argument.

(Dkt. # 17, Exhibit 5 at i). Petitioner has not objected to respondent's summarization of his issues and the court adopts the summarization.

Prior to the Washington State Court of Appeals rendering a decision on his direct appeal petitioner filed a Personal Restraint Petition. (PRP), raising four issues regarding ineffective assistance of counsel. (Dkt. # 17, Exhibit 6 page 5). The Washington Court of Appeals consolidated the direct appeal with the PRP, affirmed the judgement and sentence and dismissed both the direct appeal and the PRP. (Dkt. # 17, Exhibit 11).

Petitioner filed for discretionary review with the Washington State Supreme Court and raised the following issues:

1. Did the Court of Appeals apply the correct standard to a situation in which the defendant makes an unequivocal and clear request to represent himself?

2. Did the Court of Appeals apply the correct standard to prove consciousness of guilt in an instance where no significant resistance to arrest occurred, and did the court err by using a flawed standard to prove constructive possession of an illegal drug when the only other evidence was mere presence?

3. Did the Court of Appeals fail to apply the correct standard in examining whether a defendant had dominion and control of a vehicle and the drugs found within a locked trunk?

4. Did the Court of Appeals apply the correct standard to affirm a manufacture of methamphetamine conviction where no fingerprints or other direct evidence linked the defendant to the lab components and no accomplice liability instruction was given to the jury?

(Dkt. # 17, Exhibit 13 page 1). On January 4th, 2005 the State Supreme Court denied review without comment. (Dkt. # 17, Exhibit 15).

This federal habeas petition followed and petitioner raises two issues:

1. Kennedy was denied his constitutional right to represent himself.

2. The state presented insufficient evidence to convict Kennedy of manufacturing or possessing methamphetamine.

REPORT AND RECOMMENDATION
Page - 4

(Dkt. # 5).

In the answer to the petition respondent argues that petitioner did not exhaust the second issue in this petition because the issue was not raised at the Washington State Court of Appeals as a federal issue. The respondent also argues petitioner has filed both a direct appeal and a collateral challenge and petitioner is now barred from returning to state court. Thus, respondent concludes the second issue in this petition is unexhausted and procedurally barred. (Dkt. # 16) In the traverse petitioner concedes the second issue was not raised as a federal issue and is procedurally barred. (Dkt. # 19, page 1 and 2). Thus, the only issue before this court is the issue of self representation.

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

REPORT AND RECOMMENDATION
Page - 5

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

### DISCUSSION

A defendant has a Sixth Amendment right to self-representation at trial. Faretta v. California, 422 U.S. 806 (1975); Hendricks v. Zenon, 993 F.2d 664, 669 (9th Cir. 1994). In order to invoke the right to self-representation, the request must be: (1) knowing and intelligent; (2) unequivocal; (3) timely; and (4) not for the purposes of delay. Hendricks, 993 F.2d at 669; United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994); United States v. Schaff, 948 F.2d 501, 503 (9th Cir. 1991); Adams v. Carroll, 875 F.2d 1441, 1442 (9th Cir. 1989).

Petitioner argues his original request was unequivocal. Respondent argues petitioner withdrew his request when questioned by the Judge and his request was therefore equivocal. The Washington State Court of Appeals considered this issue and held:

> Kennedy asserts that he made an unequivocal demand to represent himself and that the trial court denied his right to self-representation. The Sixth Amendment of the United States Constitution allows a criminal defendant to waive his or her right to assistance of counsel. Faretta v. California, 422 U.S. 806, 819 (1975). Whether the defendant's waiver of representation by counsel is valid depends on the facts and circumstances of each case. State v. DeWeese, 117 Wn.2d 369, 378, 816 P.2d 1 (1991). Courts must indulge in every reasonable presumption against waiver of the right to counsel. State v. Vermillion, 112 Wn. App. 844, 851, 51 P.3d 188 (2002), review denied, 148 Wn.2d 1022 (2003). We review a trial court's disposition of a request to proceed pro se for abuse of discretion. State v. Breedlove, 79 Wn. App. 101, 106, 900 P.2d 586 (1995).
>
> If a criminal defendant prefers to represent himself without the assistance of counsel, he must make a clear and unequivocal demand to proceed pro se. State v. Luvene, 127 Wn.2d 690, 698, 903 P.2d 960 (1995). Before permitting a defendant to represent himself, the trial court must ascertain that the defendant knowingly and intelligently waives assistance of counsel. DeWeese, 117 Wn.2d at 377, 378. The best way to establish such waiver is through colloquy between the trial judge and the defendant on the record. DeWeese, 117 Wn.2d at 378. Because of the seriousness of

> the decision and the important rights that a defendant waives by asserting the right to defend himself pro se, a defendant may still waive his right to self-representation through words or conduct. State v. Fritz, 21 Wn. App. 354, 360, 585 P.2d 173 (1978), review denied, 92 Wn.2d 1002 (1979).
>
> Here, Kennedy's request to represent himself was equivocal. Prior to trial, Judge Gordon L. Godfrey reviewed Kennedy's motion to proceed pro se, and he questioned Kennedy on the record to ascertain Kennedy's ability to represent himself. Although Judge Godfrey expressed doubt as to Kennedy's ability to effectively represent himself, he indicated he would like to discuss the matter further after a noon recess and gave Kennedy the opportunity to reconsider his request. When the court reconvened, Kennedy declined an opportunity to discuss the matter further and stated, '[R]ather than make matters worse for myself, I'd rather just accept your ruling on this and leave it at that.' RP (June 18, 2001, p.m. session) at 2.
>
> At a later pre-trial conference, Judge David Foscue asked Kennedy if he had resolved the issue regarding the termination of his attorney's representation. Kennedy agreed that he had and stated that he wished to proceed to trial represented by court-appointed counsel.
>
> Kennedy's request to represent himself was equivocal and ultimately withdrawn. The trial court did not deny Kennedy's right to represent himself.

(Dkt. # 17, Exhibit 3, pages 3 to 5).

The Washington Court of Appeals identified the proper standard of review and under the facts of this case determined petitioner withdrew his request and his demand for self-representation was therefore equivocal.  Petitioner has failed to show the ruling violated clearly established federal law, as determined by the Supreme Court; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner is not entitled to relief and this petition should be **DISMISSED WITH PREJUDICE.**

CONCLUSION

Petitioner concedes his second issue is unexhausted and procedurally barred.  His first issue dealing with a request for self representation was properly decided by the Washington State Court of Appeals and petitioner is not entitled to relief.  This petition should be **DISMISSED WITH PREJUDICE.**  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

REPORT AND RECOMMENDATION
Page - 7

72(b), the clerk is directed to set the matter for consideration on **August 5th, 2005**, as noted in the caption.

Dated this 11th day of July, 2005.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 8